O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GARY DAVIS, an individual, on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. CV 06-04804 DDP (PJWx) |
| | ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND** |
| Plaintiff, | ) ) | **DENYING IN PART, AND DENYING PLAINTIFF'S MOTION FOR CLASS** |
| v. | ) ) | **CERTIFICATION** |
| CHASE BANK U.S.A., N.A., a Delaware corporation; CIRCUIT CITY STORES, INC., a Virginia corporation , | ) ) ) ) ) | |
| Defendants. | ) ) | [Dkt. Nos. 210, 215] |
| _____ | ) | |

Presently before the court is Defendant Chase Bank U.S.A., N.A. ("Chase")'s Motion for Summary Judgment ("Motion") and Plaintiff's Motion for Class Certification ("Cert. Mot."). Having reviewed the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

I.   Background

As described more fully in this court's previous orders, Circuit City Stores, Inc. ("Circuit City") offered a special credit

card to California residents, who used the card to make purchases at Circuit City stores.  First North American National Bank ("FNANB"), a Georgia bank owned by Circuit City, issued the Circuit City credit cards.  Plaintiff Gary Davis ("Plaintiff") opened a Circuit City credit card account ("Account") in August 2003.  In January 2004, Circuit City agreed to sell its finance operations, including FNANB's credit card operation, to Bank One, Delaware, N.A.("Bank One"), a Delaware Bank. In October 2004, Bank One merged with Defendant Chase Bank USA, N.A. ("Chase").

A.    The Credit Card Agreement

Plaintiff's Account was governed by a Cardmember Agreement ("Agreement"). The Agreement stated that "any purchases made under [the Account] will be made for personal, family, and household purposes." (Decl. of Daniel Tierney in Supp. of Mot. ("Tierney Decl."), Exs. 1-3.)  The Agreement also set forth the terms under which payments would be due and interest charged.  The Agreement stated that no interest would be charged if the consumer paid the existing balance of his or her account, as set forth in the last billing statement, by the due date shown on that statement.[1] Paragraph 9 of the Agreement reads:

> . . . [W]e do not charge periodic Finance Charges on new purchases billed during a billing cycle if we receive payment of your New Balance by the date and time your minimum payment is due as shown on your billing statement and we received payment of your New Balance on your

---

[1]  The Agreement refers to this ending balance as the "New Balance." ("Your billing statement shows your beginning balance and your ending balance (the 'New Balance' on your billing statement).") (Tierney Decl. Ex. 3 at ¶ 7.)

2

1

2          previous billing statement by the date and time your
           payment was due as shown on that billing statement.

3  (Tierney Decl. Ex. 3 at ¶¶ 7, 9.)

4          The Agreement also stated that Chase could "allocate payments

5  and credits in a way that is most favorable to or convenient for

6  [Chase]." (Tierney Decl., Ex. 3 at ¶ 9.)  For example, Chase could

7  "apply. . . payments and credits to balances with lower Annual

8  Percentage Rates (such as promotional Annual Percentage Rates)

9  before balances with higher Annual Percentage Rates." (Id.)

10         Certain credit card purchases were eligible for advertised

11 promotions of "no interest, no payment" or "no interest, with

12 minimum payments" for a specified period of time.  (First Amended

13 Compl. ("FAC") ¶ 5).  According to the FAC, the promotional offer

14 conveyed that the consumer would receive the benefit of a grace

15 period of anywhere from a few months to two years or more to make

16 payments on the promotional item.  (Id. ¶ 28.)

17         During the promotional grace period, finance charges on the

18 promotional item would accrue, but would not be charged, so long as

19 the consumer paid off the promotional item in full by the end of

20 the promotional period.  Only if the customer failed to pay in full

21 by the end of the grace period would the accumulated finance

22 charges be added to the balance.  Paragraph 10 of the Agreement

23 reads, in relevant part:

24

25         Interest Free Special Purchases. . . are special
           promotional purchase balances. . . for which Finance
           Charges accruing on the balance are not added to your
26         Account balance but instead are accumulated from billing
           cycle to billing cycle and posted to your Account as
27         Accumulated Finance Charges only if the Interest Free
           Special Purchase . . . has not been paid in full by the

28

                                       3

> end of the time period specified in the promotional
> offer. . . Until Accumulated Finance Charges are posted
> to your Account, we refer to these amounts as "Deferred
> Finance Charges."
>    . . .
>
> Special Promotional Options. We may at various times
> offer special promotional options. These promotions are
> subject to the terms and conditions in this Agreement, as
> modified by the terms of the promotion, which will be
> disclosed at the time of the offer. Any transaction
> charging to your Account a purchase ... identified as
> having any of the special promotional terms described
> herein or other promotional terms disclosed at the time
> of our offer, will constitute your agreement that the
> applicable promotional terms will apply to that
> transaction.

(Tierney Decl. Ex. 3 at ¶ 10.)  Finally, the Agreement states that

where the terms of the promotional offer and the Agreement

conflict, the terms of the promotional offer modify the Agreement.

(Tierney Decl. Ex. 3 at ¶ 19.)

In practice, all payments made by a consumer were allocated

first to the promotional interest-free item, even if not yet billed

and not fully due for many months, rather than to existing, non-

promotional balances that were accruing interest.  (FAC ¶ 27-28.)

As a result, Plaintiff incurred finance charges even though he

submitted payments sufficient to pay off the balance of his account

each month.

For example, in March 2006, Plaintiff purchased a $2,000

television from Circuit City under a promotional offer in which no

interest or payments were to be due until January 2008.  (Id. at ¶

25.)  Plaintiff submitted a payment of $1,736.91 to cover his pre-

existing February balance.  Instead of allocating Plaintiff's

payment to his pre-existing balance, Chase applied the entire

payment toward the just-purchased television, despite the

4

promotional interest and payment-free grace period.  Because
Plaintiff's entire payment was allocated to the promotional
purchase, there were insufficient funds to cover Plaintiff's pre-
existing February statement balance.  Accordingly, Chase assessed a
finance charge.

In June 2006, Plaintiff filed a putative class action complaint
in California state court on behalf of himself and others similarly
situated.  Defendants removed to this court in August 2006.  In
March 2009, Plaintiff filed a First Amended Complaint, alleging
that Chase (1) violated the Consumer Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1770, (2) violated California Business and
Professions Code § 17200, (3) breached the Agreement, and (4)
breached the implied covenant of good faith and fair dealing.  In
short, Plaintiff alleges that the promotional offer was a scam used
to induce customers into believing that they would have an extended
time period in which to pay off their Promotional Purchases, when
in fact the consumer had less time to pay off those purchases. (FAC
¶ 28.)

This court previously dismissed Plaintiff's CLRA claim.  Chase
now moves for summary judgment under Fed. R. Civ. P. 56 on the
three remaining claims.

## II.  Legal Standard

A motion for summary judgment must be granted when "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  A party seeking summary judgment bears the initial burden
of informing the court of the basis for its motion and of
identifying those portions of the pleadings and discovery responses
that demonstrate the absence of a genuine issue of material fact.
See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an
issue at trial, the movant must affirmatively demonstrate that no
reasonable trier of fact could find other than for the moving
party.  On an issue as to which the nonmoving party will have the
burden of proof, however, the movant can prevail merely by pointing
out that there is an absence of evidence to support the nonmoving
party's case.  See id.  If the moving party meets its initial
burden, the non-moving party must set forth, by affidavit or as
otherwise provided in Rule 56, "specific facts showing that
there is a genuine issue for trial."  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250 (1986).

It is not the court's task "to scour the record in search of a
genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275,
1278 (9th Cir. 1996).  Counsel have an obligation to lay out their
support clearly.  Carmen v. San Francisco Sch. Dist., 237 F.3d
1026, 1031 (9th Cir. 2001).  The court "need not examine the entire
file for evidence establishing a genuine issue of fact, where the
evidence is not set forth in the opposition papers with adequate
references so that it could conveniently be found."  Id.

A party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. <u>See</u> <u>Hanon v. Dataprods. Corp.</u>, 976 F.2d 497, 508-09 (9th Cir. 1992). Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); <u>Hanon</u>, 976 F.2d at 508. These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. <u>See</u> <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 156 (1982). A plaintiff seeking to certify a class under Rule 23(b)(3) must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

"In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178 (1974) (internal quotation and citations omitted). This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements,

but will not conduct a "mini-trial" or determine at this stage
whether Plaintiffs could actually prevail.   Ellis v. Costco
Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

## III. Discussion

### A.  Chase's Motion for Summary Judgment

#### 1.  Breach of Contract

A plaintiff suing for breach of contract must show that he
has himself performed in accordance with the terms of the
contract.  Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir.
2005); Cons. World Invs., Inc. v. Lido Preferred, Ltd., 9 Cal.
App. 4th 373, 380 (1992).  Chase argues that Plaintiff breached
the Agreement by purchasing products with his Circuit City credit
card for business, rather than personal, use.  (Mot. at 7-10.)

When deposed, Plaintiff testified that he operated an
electronics consulting business.  (Declaration of Joseph A.
Escarez in Support of Motion, Ex. 1 ("Davis Depo.") at 44.)[2]  Chase
asserts that many of the purchases Plaintiff made with his Circuit
City card were connected to Plaintiff's electronics consulting
business.  Plaintiff further benefitted from this type of
activity, Chase contends, by earning Circuit City "Rewards

---

[2] Chase further asserts that Plaintiff earned at least $100
per hour to, in his words, "help friends with electronic issues."
(Reply at 2.)  Chase also contends that finding and buying
electronic equipment was part of Plaintiff's business.  (Id.)
Though Chase supports its assertions with citations to the Davis
Deposition, several of the cited pages (e.g. pp. 42-43) are not
included in the excerpts provided to the court in Exhibit 1 to the
Escarez Declaration.  Plaintiff has not disputed any of Chase's
representations regarding the Davis deposition, nor raised any
objection to the transcript excerpts.

Points," which were exchangeable for goods at Circuit City stores,
and by essentially obtaining cash advances on his credit card
while avoiding the terms applicable to such advances.[3]  (Id. at 9.)

Chase argues that Plaintiff harmed Chase by exposing it to
the higher degree of risk associated with a business credit line
(Id. at 10-11), by removing from its practical grasp products in
which it had a security interest, and by depriving it of the fees
it would have been entitled to collect had Plaintiff taken a cash
advance on the Account.[4] (Id. at 14.)

Plaintiff's credit card statements reveal that between 2005
and 2006, he purchased at least ten televisions, as well as
several accessories such as flat screen t.v. mounts, audio cables,
video recorders, and blank recording media.  (Escarez Decl., Ex.2;
Mot. at 8 (citing television purchases).)  Plaintiff lived alone
at the time.  (Davis Depo. at 73:12-16.)

Chase posits that the March 2006 promotional purchase of the
$2,000 television set described above was itself part of a
business transaction.  (Mot. at 8.)  The parties do not dispute
that Plaintiff bought the set for a third party, John Godfrey, who

---

[3]   The Agreement provides that cardholders may obtain cash
advances, as well as "cash-like charges" such as traveler's checks
and money orders.  (Tierney Decl., Ex. 3 at ¶3.)  These cash and
cash-like transactions are subject to higher interest rates and
transaction fees than normal credit purchases of goods.  (Id. at ¶
8.)

[4]   Paragraph 21 of the Agreement granted Chase "a
purchase money security interest. . . in each item of
merchandise purchased at a Circuit City store or otherwise
from Circuit City on [Plaintiff's] Account, to secure payment
in full of all amounts owed to [Chase] in connection with the
purchase of that item."

9

took original possession of the set and gave Plaintiff $2,000 cash in return (the "Godfrey Transaction"). (Davis Depo. at 92.) Plaintiff testified that he bought the t.v. for Godfrey because "[i]t was helpful for both [Plaintiff and Godfrey.]]" (Id.) Plaintiff explained that he "helped [Godfrey] choose the best television and helped him get the best price," while Plaintiff himself was helped by getting "$2,000 cash in return for putting $2,000 on [the Circuit City] credit card and . . . rewards points, which . . . would have equaled $100." (Id. at 93.)  Godfrey, who Plaintiff described as a "close friend," did not otherwise compensate Plaintiff.  (Id.)

Plaintiff denies that these transactions were business-related.  In a declaration submitted in opposition to the instant motion, Plaintiff reiterates that Godfrey "was a close personal friend."  (Declaration of Gary Davis at ¶4.)  Plaintiff further states that he "was not paid any fee nor did [Plaintiff] make any profit from Godfrey."  (Id.)  Plaintiff also asserts that while he sometimes made Circuit City purchases for other people, he never marked up those purchases or profited from the re-sale of the Circuit City items.  (Id. at ¶ 3.)  The declaration explains that during the relevant time period, "flat-screen TVs were just coming into the mainstream, but some of these early models weren't very

good.  This is why [Plaintiff] purchased and returned a number of

flat-screen TVs to Circuit City."[5]  (David Decl. at ¶2.)

        The new declaration also again describes Plaintiff's

motivation for conducting the Godfrey transaction.  Plaintiff

states that "[t]he purpose of the transaction was to help

[Plaintiff's] friend get the best TV at the best price."  (David

Decl. ¶ 7.)  Chase argues that this statement is intended to avoid

summary judgment by contradicting Plaintiff's prior testimony, and

should be stricken.  (Reply at 3.)  A party may not, however,

create an issue of fact by contradicting prior deposition

testimony.  Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th

Cir. 2009); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266

(9th Cir. 1991).  The court may, therefore, strike contradictory,

sham affidavits intended to avoid summary judgment.  Id. at 267.

Plaintiff's new statement regarding his motivation for engaging in

the Godfrey transaction, however, does not contradict his

deposition testimony.  Plaintiff originally testified that he

bought the TV to help Godfrey get the best product at the best

price (Davis Depo. at 93:1-2.)  Plaintiff also originally

testified, consistent with his more recent declaration, that he

was reimbursed for the purchase and expected to receive Circuit

City Rewards Points.  (Id. at 93.)

---

        [5] Plaintiff points to no specific evidence, whether in credit
card statements or elsewhere, showing that he returned any
televisions.  While it appears that Plaintiff did return at least
one TV (Escarez Decl., Ex. 2 at CHAJUN 174), the court notes that
it is not the court's task "to scour the record in search of a
genuine issue of triable fact."  Keenan, 91 F.3d at 1278.

1    There exists a genuine dispute of material fact concerning

2    Plaintiff's purpose in entering into the Godfrey transaction and

3    other television and electronics purchases.  Chase has presented

4    evidence that Plaintiff operated an electronics consulting

5    business, purchased many televisions and other electronics in a

6    short time period, and received cash for at least one TV that

7    Plaintiff purchased, but never possessed.  Plaintiff has presented

8    evidence that he never received compensation of any kind from

9    Godfrey, that he simply deposited the cash he received into a

10   checking account and used it to pay his credit card bill (Davis

11   Decl. ¶ 7), bought the TV for Godfrey simply to help a friend get

12   a good deal, and bought ten or more TVs because some of them

13   "weren't very good."  (Id. ¶ 2.)  Whether Plaintiff's explanations

14   are credible is a question reserved for a trier of fact.

15        2.  Implied Covenant

16        Chase also argues that Plaintiff's Fourth Cause of Action for

17   Breach of the Implied Convenant of Good Faith and Fair Dealing is

18   duplicative of the Third Cause of Action for Breach of Contract.

19   (Mot. At 17.)  Because, Chase argues, the parties made an express

20   agreement regarding payment structure and allocations, the implied

21   covenant claim is duplicative of Plaintiff's breach of contract

22   claim.  (Id.)  The court agrees.  Plaintiff's opposition on this

23   issue explains how and why Chase's allocation scheme was a breach

24   of the Agreement's terms.  (Opp. at 13-17.)  Given the apparent

25   conflict between the payment allocation clause of the Agreement

12

and the promotional purchase language, the meaning of the contract has yet to be determined.  That question of contract interpretation is not presently before the court.  Nevertheless, it is clear that the contract does govern the substance of Plaintiff's good faith and fair dealing claim.  "[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 327, 327 (Cal. 2000).[6]  Accordingly, the court grants Chase's motion for summary judgment with respect to the Fourth Cause of Action.

    B.  Class Certification

    In light of the above discussion of questions of disputed, material fact at issue here, Plaintiff's Motion for Class Certification must be denied.  The factual circumstances surrounding Plaintiff's purchases are so atypical as to fall below the normally permissive standard of Rule 23(a)'s typicality requirement. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Furthermore, questions regarding Plaintiff's individual circumstances are likely to predominate over factual questions common to the class. Fed. R. Civ. P. 23(b)(3).

**IV.  Conclusion**

    For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.  The court GRANTS

---

    [6] This court previously ruled that California law applies to this matter.  (Dkt. No. 42.)

summary judgment with respect to the Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing.  In all other respects, Defendant's Motion for Summary Judgment is DENIED.  Plaintiff's Motion for Class Certification is DENIED.[7]

IT IS SO ORDERED.

Dated: January 16, 2013

                                   DEAN D. PREGERSON
                                   United States District Judge

_____

[7] Having determined that Plaintiff cannot satisfy the typicality or predominance of fact requirements under Rule 23, the court does not reach the remaining class certification factors.